Judge Berman

**UNITED STATES DISTRICT COURT**

08 CV 3664

**SOUTHERN DISTRICT OF NEW YORK**

APR 16 2008
U.S.D.C. S.D. N.Y.
CASHIERS

| | |
|---|---|
| LEE ARNOLD, Derivatively on Behalf of ISTAR FINANCIAL INC., | X Civil Action No. |
| Plaintiff, | : |
| vs. | : |
| JAY SUGARMAN, JAY S. NYDICK, CATHERINE D. RICE, GLENN R. AUGUST, ROBERT W. HOLMAN, JR., ROBIN JOSEPHS, JOHN G. MCDONALD, GEORGE R. PUSKAR, JEFFREY A. WEBER and CARTER MCCLELLAND, | : |
| Defendants, | : |
| -and- | : |
| ISTAR FINANCIAL INC., a Maryland corporation, | : |
| Nominal Defendant. | : |
| | X DEMAND FOR JURY TRIAL |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, UNJUST ENRICHMENT AND VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.     This is a shareholder derivative action brought by a shareholder of iStar Financial, Inc. ("iStar" or the "Company") on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of state and federal law, including breaches of fiduciary duties, waste of corporate assets, unjust enrichment and violations of the Securities Exchange Act of 1934 ("Exchange Act") that occurred between July 2007 and the present (the "Relevant Period") and that have caused substantial monetary losses to iStar and other damages, such as to its reputation and goodwill.

2.     iStar is a real estate investment trust ("REIT").  The Company makes and holds commercial real-estate loans and also buys commercial office buildings and then leases them to corporations.

3.     During July 2007, iStar, under defendants' direction, acquired $1.9 billion worth of Fremont General Corporation's ("Fremont") commercial-mortgage portfolio. iStar financed the deal with a $1.3 billion bridge loan.  The acquisition would prove disastrous for the Company because the deal included billions of dollars worth of construction loans and funding commitments to condominium developers that would eventually default.  The defendants, however, caused or allowed iStar to improperly conceal the impact that the Fremont acquisition would have on the Company's corporate debt and loan portfolio in the Company's Relevant Period statements.

4.     These Relevant Period statements included a number of prospectuses through which the Company offered hundreds of millions of dollars worth of iStar shares and other securities.  The defendants also directed iStar to improperly conceal the negative effects of the Fremont acquisition on the Company and the corresponding deterioration in value of the Company's debt and loan portfolio in its fiscal third quarter earnings press release.

5.     Then, on February 28, 2008, the Company was forced to disclose a $134.9 million write-down of its corporate loan and debt portfolio and a $113 million increase to its loan loss

- 1 -

provisions in its fourth quarter earnings press release. The write-down and loan loss provision increase contributed to a $78.7 million loss for the quarter.

6. In the wake of these disastrous disclosures, iStar's value declined from over $27 per share to less than $17 per share—a $1.3 billion market capitalization loss. While iStar's value was artificially inflated, defendants directed the Company to repurchase over $10 million of its own stock at artificially inflated prices.

7. Even worse, beginning in April 2008, several shareholders filed class action lawsuits against iStar alleging violations of federal securities law.

## JURISDICTION AND VENUE

8. This Court has jurisdiction in this case arising under Article III of the United States Constitution and 28 U.S.C. §1331 because of claims arising under the Exchange Act. This Court also has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interests and costs. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

9. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) iStar has offices located in this District; (ii) the transactions and wrongs complained of herein occurred while iStar was listed on the New York Stock Exchange; (iii) one or more of the defendants either resides in or maintains offices in this District; (iv) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed

- 2 -

herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to iStar occurred in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

11.     Plaintiff Lee Arnold is and was, at times relevant hereto, an owner and holder of iStar stock. Plaintiff is a citizen of Missouri.

12.     Nominal defendant iStar is a Maryland corporation with its principal executive offices located at 1114 Avenue of the Americas, 39th Floor, New York, New York. iStar operates as a finance company focusing on the commercial real estate industry.

13.     Defendant Jay Sugarman ("Sugarman") is iStar's Chief Executive Officer and has been since 1997. Sugarman is also iStar's Chairman of the Board and has been since 1996. Because of Sugarman's positions, defendant Sugarman knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of iStar including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Sugarman participated in the issuance of improper statements, including the preparation of the improper press releases and Securities and Exchange Commission ("SEC") filings and approval of other statements made to the press, securities analysts and iStar shareholders. iStar paid Sugarman the following compensation:

| Fiscal Year | Salary | Bonus | Restricted Stock Awards | LTIP Payouts | All Other Compensation |
|---|---|---|---|---|---|
| 2006 | $1,000,000 | $5,000,000 | $464,799 | - | $136,014 |
| 2005 | $1,000,000 | $2,500,000 | $1,583,364 | - | $8,983 |
| 2004 | $1,000,000 | $5,000,000 | $10,000,000 | - | $19,852 |
| 2003 | $1,000,000 | - | - | $84,799,994 | $4,392,033 |

Sugarman is a citizen of New York.

14.     Defendant Jay S. Nydick ("Nydick") is iStar's President and has been since November 2004. Because of Nydick's position, defendant Nydick knew, consciously disregarded, was reckless

- 3 -

and grossly negligent in not knowing or should have known the adverse, non-public information about the business of iStar including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Nydick participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and iStar shareholders. iStar paid Nydick the following compensation:

| Fiscal Year | Salary | Bonus | Restricted Stock Awards | All Other Compensation |
|---|---|---|---|---|
| 2006 | $350,000 | $2,250,000 | $439,459 | $136,014 |
| 2005 | $350,000 | $650,000 | $1,579,257 | $9,070 |
| 2004 | $58,333 | $108,000 | - | $4,391 |

Nydick is a citizen of New York.

15.    Defendant Catherine D. Rice ("Rice") is iStar's Chief Financial Officer and has been since November 2002. Because of Rice's position, defendant Rice knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of iStar including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management meetings, as well as reports and other information provided to her in connection therewith. During the Relevant Period, Rice participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and iStar shareholders. iStar paid Rice the following compensation:

| Fiscal Year | Salary | Bonus | Restricted Stock Awards | All Other Compensation |
|---|---|---|---|---|
| 2006 | $350,000 | $1,500,000 | $387,388 | $115,141 |
| 2005 | $225,000 | $1,025,000 | $1,319,489 | $9,280 |
| 2004 | $225,000 | $400,000 | - | $11,435 |
| 2003 | $225,000 | $325,000 | - | $28,876 |

Rice is a citizen of New York.

16.     Defendant Robin Josephs ("Josephs") is Lead Director of iStar and has been since May 2007 and a director and has been since March 1998. Josephs is also Chairman of iStar's Compensation Committee and a member of the Audit Committee and has been since at least April 2007. Because of Josephs' positions, defendant Josephs knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of iStar including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to her in connection therewith. During the Relevant Period, Josephs participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and iStar shareholders. Josephs is a citizen of Illinois.

17.     Defendant Glenn R. August ("August") is an iStar director and has been since May 2005. Because of August's position, defendant August knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of iStar including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, August participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and iStar shareholders. August is a citizen of New York.

18.     Defendant Robert W. Holman, Jr. ("Holman") is an iStar director and has been since November 1999. Holman is also a member of iStar's Audit Committee and has been since at least April 2007. Because of Holman's positions, defendant Holman knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of iStar including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with

other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Holman participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and iStar shareholders. Holman is a citizen of Hawaii.

19.     Defendant John G. McDonald ("McDonald") is an iStar director and has been since November 1999. McDonald is also a member of iStar's Compensation Committee and has been since at least April 2007. Because of McDonald's positions, defendant McDonald knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of iStar including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, McDonald participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and iStar shareholders. McDonald is a citizen of California.

20.     Defendant George R. Puskar ("Puskar") is an iStar director and has been since November 1999. Puskar is a current member of the Audit Committee. Because of Puskar's positions, defendant Puskar knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of iStar including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Puskar participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and iStar shareholders. Puskar is a citizen of Florida.

- 6 -

21.     Defendant Jeffrey A. Weber ("Weber") is an iStar director and has been since June 2003. Weber is also a member of iStar's Compensation Committee and has been since at least April 2007. Because of Weber's positions, defendant Weber knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of iStar including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, Weber participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and iStar shareholders. Weber is a citizen of New York.

22.     Defendant Carter McClelland ("McClelland") was an iStar director from May 2007 to October 2007. Because of McClelland's position, defendant McClelland knew, consciously disregarded, was reckless and grossly negligent in not knowing or should have known the adverse, non-public information about the business of iStar including its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at Board meetings and committees thereof, as well as reports and other information provided to him in connection therewith. During the Relevant Period, McClelland participated in the issuance of improper statements, including the preparation of the improper press releases and SEC filings and approval of other statements made to the press, securities analysts and iStar shareholders. McCelland is a citizen of New York.

23.     The defendants identified in ¶¶13, 16-22 are referred to herein as the "Director Defendants." The defendants identified in ¶¶13-15 are referred to herein as the "Officer Defendants." Collectively, the Director Defendants and the Officer Defendants are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

24.     By reason of their positions as officers, directors and/or fiduciaries of iStar and because of their ability to control the business and corporate affairs of iStar, the Individual

Defendants owed iStar and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage iStar in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of iStar and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

25.     Each director and officer of the Company owes to iStar and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's revenue, margins, operations, performance, management, projections and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

26.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of iStar, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Because of their advisory, executive, managerial and directorial positions with iStar, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper representations of iStar.

27.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of iStar, and was at all times acting within the course and scope of such agency.

28.     To discharge their duties, the officers and directors of iStar were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of iStar were required to, among other things:

        (a)     refrain from acting upon material inside corporate information to benefit themselves;

- 8 -

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(c)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and financial results and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(e)     remain informed as to how iStar conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(f)     ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable laws, rules and regulations.

29.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of iStar, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period have been ratified by the remaining Individual Defendants who collectively comprised all of iStar's Board during the Relevant Period.

- 9 -

30.     The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to misrepresent its financial results and business prospects, as detailed herein *infra*, and by failing to prevent the Individual Defendants from taking such illegal actions.

## CONSPIRACY, AIDING AND ABETTING AND CONCERTED ACTION

31.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

32.     During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the Company was improperly misrepresenting its business prospects and financial results; (ii) enhance the Individual Defendants' executive and directorial positions at iStar and the profits, power and prestige that the Individual Defendants enjoyed as a result of holding these positions; and (iii) deceive the investing public, including shareholders of iStar, regarding the Individual Defendants' management of iStar's operations, the Company's financial health and stability, and its future business prospects that had been misrepresented by defendants throughout the Relevant Period. In furtherance of this plan, conspiracy and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein.

33.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct during the Relevant Period. During this time, the Individual Defendants caused the Company to conceal the true fact that iStar was misrepresenting its business prospects.

34.     The purpose and effect of the Individual Defendants' conspiracy, common enterprise and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, waste of corporate assets and unjust enrichment; to conceal adverse information concerning the Company's operations, financial condition and future business prospects.

- 10 -

35. The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently release improper statements. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

36. Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## BACKGROUND

37. iStar makes and holds commercial real-estate loans and also buys commercial office buildings and then leases them to corporations. During July 2007, iStar, under the Individual Defendants' direction, acquired $1.9 billion worth of Fremont's commercial-mortgage portfolio. iStar financed the deal with a $1.3 billion bridge loan. The acquisition would prove disastrous for the Company because the deal included billions of dollars worth of construction loans and funding commitments to condominium developers that would eventually default. The Individual Defendants caused or allowed iStar to improperly conceal the impact that the Fremont acquisition would have on the Company's corporate debt and loan portfolio in the improper statements described below.

## IMPROPER STATEMENTS

38. The Individual Defendants by their fiduciary duties of care, good faith and loyalty owe to iStar a duty to ensure that the Company's public filings and statements fairly represent the operations, financial results and business prospects of the Company. In order to adequately carry out these duties, it is necessary for the Individual Defendants to know and understand the material, non-public information that should be either disclosed or omitted from the Company's public statements.

39. This material, non-public information principally included the fact that, during the Relevant Period, iStar was understating the value of is corporate debt and loan portfolio and its loan loss provision. The Director Defendants owed a fiduciary duty to iStar to ensure that the Company

- 11 -

properly disclosed all material facts concerning the Company. Furthermore, defendants Holman, Josephs and Puskar, as members of the Audit Committee, had a special duty to know and understand this material information as set out in the Audit Committee's charter which provides that the Audit Committee is responsible for reviewing and discussing: (i) iStar's reserves; (ii) iStar's information systems, internal accounting and financial controls; and (iii) iStar's quarterly financial statements.

40.     The Officer Defendants, as iStar officers, had ample opportunity to discuss this material information with their fellow officers at management meetings and via internal corporate documents and reports. Moreover, the Director Defendants, as directors of iStar, had ample opportunity to discuss this material information with management and fellow directors at any of the Board meetings that occurred during the Relevant Period, as well as at meetings of committees of the Board. Despite these duties, the Individual Defendants negligently, recklessly and/or intentionally caused or allowed, by their actions or inactions, the following improper statements to be disseminated by iStar to the investing public and the Company's shareholders during the Relevant Period.

41.     On or about October 10, 2007, the Individual Defendants caused or allowed iStar to file a prospectus with the SEC in support of an offering of convertible senior floating rate notes. The prospectus contained a section titled "Recent Developments," which described the Company's loan portfolio and its acquisition of Fremont. In particular, the prospectus provided as follows:

> On July 2, 2007, we acquired the commercial real estate lending business of Fremont Investment & Loan, or Fremont, a subsidiary of Fremont General Corporation, pursuant to a definitive asset purchase agreement, dated May 21, 2007. We acquired approximately 285 commercial mortgage loans in the transaction, substantially all of which are first mortgage loans. Approximately 60% of the loans, by carrying value, as of June 30, 2007, are collateralized by apartment and other types of residential properties located throughout the United States. The balance of the loans are collateralized by a variety of property types. Approximately 130 employees of Fremont located in eight offices throughout the United States joined our company at the closing of the transaction.
>
> *The aggregate principal amount of the loans that we acquired was approximately $6.3 billion as of June 30, 2007.* As of that date, approximately $500 million principal amount of the loans were non-performing loans. We paid Fremont approximately $1.9 billion in cash and concurrently sold to Fremont a senior A-participation interest in the acquired portfolio of loan assets, representing an approximately 70% interest in the portfolio. We retained a 30% B-participation interest in the acquired portfolio of loan assets with an approximate $2.1 billion principal amount. Our B-participation interest is in the first loss position with respect to the portfolio. In addition, we have agreed to fund up to approximately $3.7 billion

- 12 -

of unfunded loan commitments associated with the portfolio. We will hold title to all of the loans and will be solely responsible for asset management and loan servicing.

42.   On or about October 12, 2007, the Individual Defendants caused or allowed iStar to file a prospectus with the SEC in support of an offering of $800 million worth of convertible senior floating rate notes. The prospectus contained a section titled "Recent Developments," which described the Company's loan portfolio and its acquisition of Fremont. In particular, the prospectus provided as follows:

On July 2, 2007, we acquired the commercial real estate lending business of Fremont Investment & Loan, or Fremont, a subsidiary of Fremont General Corporation, pursuant to a definitive asset purchase agreement, dated May 21, 2007. We acquired approximately 285 commercial mortgage loans in the transaction, substantially all of which are first mortgage loans. Approximately 60% of the loans, by carrying value, as of June 30, 2007, are collateralized by apartment and other types of residential properties located throughout the United States. The balance of the loans are collateralized by a variety of property types. Approximately 130 employees of Fremont located in eight offices throughout the United States joined our company at the closing of the transaction.

The aggregate principal amount of the loans that we acquired was approximately $6.3 billion as of June 30, 2007. As of that date, approximately $500 million principal amount of the loans were non-performing loans. We paid Fremont approximately $1.9 billion in cash and concurrently sold to Fremont a senior A-participation interest in the acquired portfolio of loan assets, representing an approximately 70% interest in the portfolio. We retained a 30% B-participation interest in the acquired portfolio of loan assets with an approximate $2.1 billion principal amount. Our B-participation interest is in the first loss position with respect to the portfolio. In addition, we have agreed to fund up to approximately $3.7 billion of unfunded loan commitments associated with the portfolio. We will hold title to all of the loans and will be solely responsible for asset management and loan servicing.

43.   On November 6, 2007, the Individual Defendants caused or allowed iStar to issue its third fiscal quarter 2007 earnings press release. For the quarter, iStar reported record earnings of $1.07 per share or $135.8 million. With regard to the Company's loan portfolio, the earnings press release provided as follows:

At September 30, 2007, first mortgages, participations in first mortgages, senior loans and corporate tenant lease investments collectively comprised 86.0% of the Company's asset base, versus 83.6% in the prior quarter. The Company's loan portfolio consisted of 78% floating rate and 22% fixed rate loans, with a weighted average maturity of 3.2 years.

The weighted average last dollar loan-to-value ratio for all structured finance assets was 66.6%. At quarter end, the Company's corporate tenant lease assets were 95.6% leased with a weighted average remaining lease term of 11.2 years. At September 30, 2007, the weighted average risk ratings of the Company's structured finance and corporate tenant lease assets were 2.92 and 2.48, respectively, versus 2.78 and 2.50, respectively, in the previous quarter.

- 13 -

Inclusive of the assets acquired in the Fremont acquisition, at September 30, 2007, the Company had 29 loans on non-performing loan (NPL) status representing $848.7 million of gross book value. At the end of the third quarter, the Company had 28 loans on its watch list representing $1.1 billion of gross book value. Gross book values represent iStar's book value plus Fremont's A-participation interest. Excluding Fremont's A-participation interest on the associated assets, NPL and watch list assets were $428.7 million and $610.5 million, respectively. The Company's policy is to stop the accrual of interest on loans placed on NPL status. The Company believes it has adequate collateral and loan loss reserves to support the book value for each of the NPL and watch list assets.

The Company had $124.2 million in loan loss reserves at September 30, 2007 versus $52.2 million at December 31, 2006. The third quarter increase of $62.0 million in loan loss reserves was the result of the Company's regular quarterly risk ratings review process as well as the addition of the Fremont portfolio. This quarter's risk ratings process included a comprehensive review of the Fremont portfolio.

The Company's total loss coverage, defined as the combination of loan loss reserves and remaining purchase discount from the Fremont acquisition, was $344.9 million or 3.2% of total loan assets at the end of the third quarter.

44.     On December 13, 2007, the Individual Defendants caused or allowed iStar to file a preliminary prospectus in support of an offering of 6 million iStar common shares. The prospectus failed to disclose material information concerning iStar's corporate debt and loan portfolio and loan loss provision.

45.     On December 17, 2007, the Individual Defendants caused or allowed iStar to file a prospectus in support of an offering of 8 million iStar common shares. The prospectus failed to disclose material information concerning iStar's corporate debt and loan portfolio and loan loss provision.

## THE TRUTH IS REVEALED

46.     Then, on February 28, 2008, iStar issued its fiscal fourth quarter and full year 2007 earnings press release. The press release disclosed that iStar had reported a loss of $0.62 per share or $78.7 million for the quarter. This loss stemmed from a $113 million increase in the Company's loan loss provision and a $134.9 write-down of the Company's corporate loan and debt portfolio. The earnings press release provided as follows:

iStar reported adjusted earnings (loss) allocable to common shareholders for the quarter of ($36.6) million or ($0.29) per diluted common share. Included in fourth quarter earnings were $134.9 million of non-cash charges associated with the impairment of two credits that are accounted for as held-to-maturity debt securities in its Corporate Loan and Debt portfolio. These securities are performing and continue to pay interest. Accounting standards for these securities do not allow for loan loss reserves to be taken on these assets; the standards require that the value be impaired

- 14 -

based on a significant drop in market price and on management's current assessment that the decline is other than temporary.

\* \* \*

Net income (loss) allocable to common shareholders for the fourth quarter was ($78.7) million, or ($0.62) per diluted common share, compared to $79.2 million, or $0.65 per diluted common share for the fourth quarter 2006. The year-over-year decrease was due to the impact of the non-cash impairment charges and higher provision for loan losses in the fourth quarter. Please see the financial tables that follow the text of this press release for a detailed reconciliation of adjusted earnings to GAAP net income.

\* \* \*

The Company had $217.9 million in loan loss reserves at December 31, 2007 versus $52.2 million at December 31, 2006. During the fourth quarter, the Company recorded $113.0 million in loan loss provision versus $62.0 million in the prior quarter. The $51.0 million quarter-over-quarter increase reflects the continued deterioration in the overall credit markets and its impact on the Company's portfolio as determined in its regular quarterly risk ratings review process.

47.    Also, on February 28, 2008, the *Associated Press* published an article titled "IStar's

Stock Sinks to 7-Year Low" that discussed the Company's dismal fourth quarter earnings. The

article provided as follows:

iStar Financial Inc.'s stock sank to its cheapest price in seven years after the commercial mortgage investor reported bad credit in its loan portfolio on Thursday.

iStar Financial lost $80.4 million, or 62 cents per share, in the fourth quarter, compared with profit of $81.1 million, or 65 cents per share, in the fourth quarter of 2006.

iStar Financial owns a $11 billion portfolio of commercial real estate loans. The company said the portfolio lost $134.9 million on two loans because of a drop in the market price for the debt.

Excluding this charge, profit totaled 74 cents per share. Analysts polled by Thomson Financial forecast much higher profit of $1.06 per share.

The company collected $308.1 million in interest payments on its loan portfolio, an increase of 91 percent. This was mainly because of $5.4 billion in loans acquired when the company bought Fremont Investment & Loan for $1.9 billion.

iStar's portfolio is suffering from bad credit. About $1.2 billion in loans are not being repaid right now, compared with $848.7 million at the end of the last quarter.

Deutsche Bank analyst Stephen Laws downgraded iStar to "Hold" from "Buy."

48.    On April 2, 2008, *The Wall Street Journal* published an article titled "A Tale of iStar's

Fremont Bet: Sugarman's High-Risk Story." According to the article, the Fremont acquisition

- 15 -

brought with it "billions of dollars of construction loans and funding commitments to condominium developers, the kind of assets that have higher chances of default in today's housing crisis." The article provided in part:

> When iStar Financial Inc. announced its plan to snap up the commercial real-estate lending business from Fremont General Corp. last spring, the deal was applauded as the latest coup for Jay Sugarman, who over 10 years had built iStar from a start-up into a real-estate financing powerhouse with a solid credit record.
>
> Instead, the deal has proved toxic, putting a stain on Mr. Sugarman's reputation and a cloud of uncertainty over the company. Most immediately, it burdened iStar with a $1.3 billion bridge loan that comes due June 30 amid the most perilous credit environment in decades. Longer term, the deal loaded iStar with billions of dollars of construction loans and funding commitments to condominium developers, the kind of assets that have higher chances of default in today's housing crisis.
>
> iStar's stock has plummeted almost 70% since it closed the Fremont deal in July. With default risk rising, it has been forced to increase its reserves for future loan losses to $185 million at the end of last year from $14 million in 2006. "It's a high-risk story," said analyst David Fick at Stifel Nicolaus, noting that the biggest concern is that "they will not get enough money from repayments on its existing loans to meet their funding commitments and service debt."

49.     In the wake of these disclosures, iStar's value declined from over $27 per share to less than $17 per share—a $1.3 billion market capitalization loss.

## REASONS THE STATEMENTS WERE IMPROPER

50.     iStar's Relevant Period statements, described above, failed to disclose and misrepresented the following material adverse facts, which the Individual Defendants knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known:

       (a)     iStar was overstating its corporate loan and debt portfolio;

       (b)     iStar's was understating its loan loss provision;

       (c)     iStar was not transparently disclosing its exposure to losses from defaults in the billions of dollars worth of loans acquired from Fremont; and

       (d)     iStar had no reasonable basis for its improper statements concerning its financial results and business prospects.

## THE IMPROPER BUYBACK

51.     During the Relevant Period, while iStar's stock was artificially inflated due to the improper statements described above, the Director Defendants authorized the buyback of over $10

million worth of iStar's shares at an average price of approximately $26.83 per share, which is substantially higher than iStar's current share price of less than $17 per share. On information and belief, in authorizing the buyback, the Board members failed to properly discuss and consider the Company's corporate loan and debt portfolio, loan loss provision and business prospects.

## DAMAGES TO ISTAR CAUSED BY THE INDIVIDUAL DEFENDANTS

52.     As a result of the Individual Defendants' improprieties, iStar disseminated improper statements concerning its financial results and business prospects as alleged above. These improper statements have devastated iStar's credibility as reflected by the Company's $1.3 billion market capitalization loss.

53.     Further, as a direct and proximate result of the Individual Defendants' action, iStar has expended and will continue to expend significant sums of money. Such expenditures include, but are not limited to:

(a)     costs incurred in investigating and defending iStar and certain officers in the class action lawsuits, plus potentially tens of millions of dollars in settlement or to satisfy an adverse judgment; and

(b)     costs incurred from the repurchase of $10 million worth of shares at artificially inflated prices;

(c)     costs incurred from increased costs for raising capital as a result of a loss in investor confidence in iStar's offering prospectuses; and

(d)     costs incurred from compensation and benefits paid to the defendants who have breached their duties to iStar.

54.     Moreover, these actions have irreparably damaged iStar's corporate image and goodwill. For at least the foreseeable future, iStar will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that iStar's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

55.     Plaintiff brings this action derivatively in the right and for the benefit of iStar to redress injuries suffered, and to be suffered, by iStar as a direct result of breaches of fiduciary duty, waste of corporate assets, unjust enrichment and violations of the Exchange Act, as well as the aiding and abetting thereof, by the Individual Defendants.  iStar is named as a nominal defendant solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

56.     Plaintiff will adequately and fairly represent the interests of iStar in enforcing and prosecuting its rights.

57.     Plaintiff is and was an owner of the stock of iStar during times relevant to the Individual Defendants' wrongful course of conduct alleged herein, and remains a shareholder of the Company.

58.     The current Board of iStar consists of the following seven individuals: defendants Sugarman, August, Holman, Josephs, McDonald, Puskar and Weber.

59.     The Board ignored red flags that should have alerted it to the fact that iStar was understating its corporate debt and loan portfolio and its loan loss provision.  These red flags included the following:

(a)     **The Subprime Mortgage Crisis**: The Subprime Mortgage Crisis arose in early 2006 when a downturn in the housing market coincided with rising delinquency rates amongst subprime borrowers.  The aftershocks of that crisis have been far reaching with a number of investment banks and mortgage lenders reporting billions of dollars in losses.  That crisis also severely impacted the credit markets and signaled a downturn in the commercial real estate market. The crisis should have alerted the Board to closely examine iStar's corporate debt and loan portfolio and loan loss provision because of the Company's extensive dealings in commercial real estate.

(b)     **The Fremont Acquisition**: The $1.9 billion Fremont acquisition occurred at the height of the subprime mortgage crisis during the summer of 2007.  The Fremont acquisition included billions of dollars worth of construction loans that carried a high risk of default.  The Fremont acquisition should have prompted the Board to scrutinize the book value of these loans.

Despite these red flags, the Board took no action to ensure that iStar was properly disclosing the value of its corporate debt and loan portfolio and loan loss provision until it was too late. The Board's conscious disregard of the red flags described above and failure to take action was not the product of valid business judgment. Accordingly, demand is futile as to defendants Sugarman, August, Holman, Josephs, McDonald, Puskar and Weber.

60.     Defendants Sugarman, August, Holman, Josephs, McDonald, Puskar and Weber, as members of the Board during the Relevant Period, authorized the repurchase of over $10 million worth of the Company's shares at artificially inflated prices. The Board's decision to authorize the stock repurchases was not the product of valid business judgment. Among other things, the Board failed to properly discuss or consider the red flags alleged above. Accordingly, demand is futile.

61.     Defendants Holman, Josephs and Puskar were, during the Relevant Period, members of the Audit Committee. The Audit Committee's charter provides that the Audit Committee is responsible for reviewing and discussing: (i) iStar's reserves; (ii) iStar's information systems, internal accounting and financial controls; and (iii) iStar's quarterly financial statements. Thus, defendants Holman, Josephs and Puskar were responsible for overseeing and directly participating in the dissemination of iStar's improper press releases, prospectuses, financial results and guidance. Accordingly, Holman, Josephs and Puskar breached their fiduciary duties of due care, loyalty and good faith because they participated in the preparation of improper financial statements and earnings press releases that contained improper material information. Particularly, these defendants reviewed and failed to correct iStar's improper statements described above. Thus, Holman, Josephs and Puskar face a sufficiently substantial likelihood of liability for their breach of fiduciary duties so any demand upon them is futile.

62.     The principal professional occupation of defendant Sugarman is his employment with iStar, pursuant to which he received and continues to receive substantial monetary compensation and other benefits. Specifically, iStar paid Sugarman the following compensation:

| Fiscal Year | Salary | Bonus | Restricted Stock Awards | LTIP Payouts | All Other Compensation |
|---|---|---|---|---|---|
| 2006 | $1,000,000 | $5,000,000 | $464,799 | - | $136,014 |
| 2005 | $1,000,000 | $2,500,000 | $1,583,364 | - | $8,983 |

| 2004 | $1,000,000 | $5,000,000 | $10,000,000 | - | $19,852 |
| 2003 | $1,000,000 | - | - | $84,799,994 | $4,392,033 |

Accordingly, Sugarman lacks independence from defendants Josephs, McDonald and Weber, who are not disinterested and/or independent and who exert influence over Sugarman's compensation by virtue of their positions as members of the Compensation Committee. The Compensation Committee has the authority to review and approve Sugarman's base salary, bonus and equity compensation. This lack of independence renders defendant Sugarman incapable of impartially considering a demand to commence and vigorously prosecute this action.

63.     Each of the key officers and directors knew of and/or directly benefited from the wrongdoing complained of herein.

64.     The Director Defendants of iStar, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from iStar's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein and are therefore not disinterested parties.

65.     The acts complained of constitute violations of the fiduciary duties owed by iStar's officers and directors and these acts are incapable of ratification.

66.     Each of the Director Defendants of iStar authorized and/or permitted the false statements disseminated directly to the public or made directly to securities analysts and which were made available and distributed to shareholders, authorized and/or permitted the issuance of various improper statements and are principal beneficiaries of the wrongdoing alleged herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by them.

67.     Any suit by the current directors of iStar to remedy these wrongs would likely expose the Individual Defendants and iStar to further violations of the securities laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

68.     iStar has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for iStar any part of the damages iStar suffered and will suffer thereby.

69.    If the current directors were to bring this derivative action against themselves, they would thereby expose their own misconduct, which underlies allegations against them contained in the class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions, in an amount likely to be in excess of any insurance coverage available to the Individual Defendants. In essence, they would be forced to take positions contrary to the defenses they will likely assert in the securities class actions. This they will not do. Thus, demand is futile.

70.    Moreover, despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recovery for iStar for any of the wrongdoing alleged by plaintiff herein.

71.    Plaintiff has not made any demand on shareholders of iStar to institute this action since such demand would be a futile and useless act for the following reasons:

(a)    iStar is a publicly held company with over 136 million shares outstanding, and over thousands of shareholders;

(b)    making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses or phone numbers of shareholders; and

(c)    making demand on all shareholders would force plaintiff to incur huge expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against the Director Defendants and Defendants Nydick and Rice for Violation of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

72.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

73.    During the Relevant Period, the Director Defendants and defendants Nydick and Rice disseminated or approved public statements that improperly portrayed iStar's business prospects, growth and margins. The Director Defendants and defendants Nydick and Rice knew that the Company's public statements concerning its corporate debt and loan portfolio, loan loss provision and business prospects were misleading and intended to deceive, manipulate and/or defraud in connection therewith.

- 21 -

74. At the same time the price of the Company's common stock was inflated due to the improper reporting of iStar's financial results, the Director Defendants and defendants Nydick and Rice were causing iStar to repurchase over $10 million worth of its own stock on the open market at an average inflated price of approximately $26.83 per share, which is substantially higher than iStar's current share price of under $17 per share.

75. As such, the Director Defendants and defendants Nydick and Rice violated §10(b) of the Exchange Act and SEC Rule 10b-5 in that they:

(a)  employed devices, schemes and artifices to defraud;

(b)  made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)  engaged in acts, practices and a course of business that operated as a fraud or deceit upon iStar and others in connection with their purchases of iStar common stock during the Relevant Period.

76. As a result of the Director Defendants' and defendants Nydick's and Rice's misconduct, iStar has and will suffer damages in that it paid artificially inflated prices for iStar common stock purchased on the open market. iStar would not have purchased iStar common stock at the prices it paid, had the market previously been aware that the market price of iStar's stock was artificially and falsely inflated by defendants' misleading statements. As a direct and proximate result of these defendants' wrongful conduct, iStar suffered damages in connection with its purchases of iStar common stock during the Relevant Period. By reason of such conduct, the Director Defendants and defendants Nydick and Rice are liable to the Company pursuant to §10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.

**COUNT II**

**Against Defendants Sugarman, Nydick, Rice, Holman, Josephs and Puskar for Violation of §20(a) of the Exchange Act**

77. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

78. Defendant Sugarman, iStar's CEO, defendant Nydick, iStar's President, defendant

Rice, iStar's CFO, and defendants Holman, Josephs and Puskar, as members of the Audit Committee, directly or indirectly controlled or induced the Individual Defendants who violated §10(b) of the Exchange Act and SEC Rule 10b-5 as alleged above.

79.     These defendants are jointly and severally liable to the same extent as the Individual Defendants under §20(a) of the Exchange Act.  These defendants did not act in good faith.

## COUNT III

### Against All Defendants for Breach of Fiduciary Duty

80.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

81.     The Individual Defendants owed and owe iStar fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe iStar the highest obligation of good faith, fair dealing, loyalty and due care.

82.     The Individual Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

83.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the business prospects of the Company and failed to correct the Company's publicly reported guidance.  In particular, iStar's Relevant Period statements improperly reported the Company's reserves for expected losses given its poorly priced legacy contracts and costs.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

84.     As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, iStar has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

85.     Plaintiff, on behalf of iStar, has no adequate remedy at law.

## COUNT IV

### Against All Defendants for Breach of Fiduciary Duty for Abuse of Control

86.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

87.     The Individual Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence iStar, for which they are legally responsible. In particular, the Individual Defendants abused their positions of authority by causing or allowing iStar to issue statements that improperly portrayed iStar's corporate loan and debt portfolio, loan loss provision and business prospects.

88.     As a direct and proximate result of the Individual Defendants' abuse of control, iStar has sustained significant damages. These damages include, but are not limited to, iStar's severe loss of market credibility as reflected in its $1.3 billion market capitalization loss and substantial costs in connection with the securities class action lawsuits.

89.     As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

90.     Plaintiff, on behalf of iStar, has no adequate remedy at law.

### COUNT V

**Against All Defendants for Breach of Fiduciary Duty for Gross Mismanagement**

91.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

92.     By their actions alleged herein, the Individual Defendants, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of iStar in a manner consistent with the operations of a publicly held corporation.

93.     As a direct and proximate result of the Individual Defendants' gross mismanagement and breaches of duty alleged herein, iStar has sustained significant damages in excess of hundreds of millions of dollars.

94.     As a result of the misconduct and breaches of duty alleged herein, the Individual Defendants are liable to the Company.

95.     Plaintiff, on behalf of iStar, has no adequate remedy at law.

## COUNT VI

### Against All Defendants for Waste of Corporate Assets

96.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

97.     As a result of the misconduct described above, the Individual Defendant wasted corporate assets: (i) by failing to properly consider the interests of the Company and its public shareholders; (ii) by failing to conduct proper supervision; (iii) by paying bonuses to certain of its executive officers; (iv) by spending over $10 million to repurchase the Company's stock at artificially inflated prices; and (v) by incurring potentially tens of millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

98.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

99.     Plaintiff, on behalf of iStar, has no adequate remedy at law.

## COUNT VII

### Against All Defendants for Unjust Enrichment

100.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

101.    By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of iStar.

102.    Plaintiff, as a shareholder and representative of iStar, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.     Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties, waste of corporate assets, unjust enrichment and violations of the Exchange Act;

B.      Declaring that the Director Defendants and defendants Nydick and Rice are liable under of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and that defendants Sugarman, Nydick, Rice, Holman, Josephs and Puskar are jointly and severally liable under §20(a) of the Exchange Act and awarding iStar damages;

C.      Directing iStar to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect iStar and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

1.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

2.      a provision to permit the shareholders of iStar to nominate at least three candidates for election to the Board;

3.      a proposal to ensure the accuracy of the qualifications of iStar's directors, executives and other employees;

4.      a proposal to ensure adequate transparency in iStar's public statements concerning earnings guidance and business prospects;

5.      a proposal to ensure that iStar's prospectus filed in connection with offerings of its securities are truthful and transparent;

6.      a proposal to ensure prudent expenditure of Company funds in stock repurchases; and

7.      a proposal to appropriately test and then strengthen the internal audit and control functions.

D.      Extraordinary equitable and/or injunctive relief as permitted by law, equity and state statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust on or otherwise restricting defendants' assets so as to assure that plaintiff on behalf of iStar has an effective remedy;

E.     Awarding to iStar restitution from the defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

F.     Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

G.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: April 16, 2008

LAW OFFICES OF THOMAS G. AMON

_____
THOMAS G. AMON (TGA – 1515)

250 West 57th Street,
Suite 1316
New York, New York 10107
Telephone: (212) 810-2430
Facsimile: (212) 810-2427

ROBBINS UMEDA & FINK, LLP
BRIAN J. ROBBINS
JEFFREY P. FINK
MARK A. GOLOVACH
DANIEL R. FORDE
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

Attorneys for Plaintiff

336575_4.DOC

- 27 -

## VERIFICATION

I, Brian J. Robbins, hereby declare as follows:

    1.    I am a member of the law firm of Robbins Umeda & Fink, LLP, counsel for plaintiff in the iStar Financial action. I have read the foregoing complaint and know the contents thereof. I am informed and believe the matters therein are true and on that ground allege that the matters stated therein are true.

    2.    I make this Verification because plaintiff is absent from the County of San Diego where I maintain my office.

    Executed this 16th day of April 2008, at San Diego, California

                                     BRIAN J. ROBBINS